In re Watson, a Juvenile, et al.

[Cite as In re Watson (1989), 47 Ohio St. 3d 86.]

(Nos. 88-1470 and 88-1476—Submitted
October 17, 1989—Decided December 20, 1989.)

*Arthur M. Ney, Jr.,* prosecuting attorney, and *Christian J. Schaefer,* for appellee.

*J. Dean Carro,* for appellant Terrence Watson.

*Randall A. Dana,* public defender, and *George H. Lancaster, Jr.,* for appellant David Johnson.

HOLMES, J. One of the issues presented is whether the appellants voluntarily waived their *Miranda* rights in the absence of an interested adult or parent. Also, we are asked to determine whether the trial court properly denied appellants' motions for separate trials. For the reasons which follow, we answer both queries in the affirmative.

Appellants assert in their first proposition of law that under the totality of the circumstances they failed to appreciate the nature and significance of their constitutional rights as enunciated in *Miranda* v. *Arizona* (1966), 384 U.S. 436. Therefore, they urge, their confessions were involuntarily obtained.

In *State* v. *Edwards* (1976), 49 Ohio St. 2d 31, 3 O.O. 3d 18, 358 N.E. 2d 1051, vacated in part on other grounds (1978), 438 U.S. 911, paragraph two of the syllabus, we stated:

"In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."

The Supreme Court of the United States has noted with respect to juvenile defendants that "the constitutional privilege against self-incrimination is applicable in the case of juveniles as it is with respect to

adults. We appreciate that special problems may arise with respect to waiver of the privilege by or on behalf of children, and that there may well be some differences in technique — but not in principle — depending upon the age of the child and the presence and competence of parents. * * * If counsel was not present for some permissible reason when an admission was obtained, the greatest care must be taken to assure that the admission was voluntary in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair." *In re Gault* (1967), 387 U.S. 1, 55. In essence, the fact that a juvenile is subject to police interrogation does not change the nature of the constitutional rights afforded to him.

Appellants propose that we establish a more rigorous standard with respect to juvenile defendants who are subjected to custodial interrogation. Specifically, this proposed standard has been labeled the "independent advice/interested adult" standard, and has been adopted in a few jurisdictions outside Ohio. In *Lewis* v. *State* (1972), 259 Ind. 431, 439, 288 N.E. 2d 138,142, the Supreme Court of Indiana held "that a juvenile's statement or confession cannot be used against him at a subsequent trial or hearing unless both he and his parents or guardian were informed of his rights to an attorney, and to remain silent. Furthermore, the child must be given an opportunity to consult with his parents, guardian or an attorney representing the juvenile as to whether or not he wishes to waive those rights.

After such consultation the child may waive his rights if he so chooses provided of course that there are no elements of coercion, force, or inducement present."[1] See, also, *Commonwealth* v. *A Juvenile* (1983), 389 Mass. 128, 134, 449 N.E. 2d 654, 657.

In *State* v. *Stewart* (1964), 176 Ohio St. 156, 159-160, 27 O.O. 2d 42, 44, 198 N.E. 2d 439, 442, certiorari denied (1964), 379 U.S. 947, we addressed a situation in which a confession was elicited from a juvenile during custodial interrogation where his parents and friends were not readily accessible due to his flight from the jurisdiction: "There is nothing in the 'totality of circumstances' involved here, which made the confession anything but voluntary. To find that it was inadmissible, we would have to hold that any confession made by a person who is not yet 18 years old is involuntary unless one of his parents or his attorney is present. This is not the law."

Furthermore, we explicitly declined to adopt the "independent advice/interested adult" standard in *State* v. *Bell* (1976), 48 Ohio St. 2d 270, 276-277, 2 O.O. 3d 427, 430-431, 358 N.E. 2d 556, 562, reversed on other grounds, *Bell* v. *Ohio* (1978), 438 U.S. 637. Specifically, we stated that "[w]e decline * * * [the] invitation to alter existing Ohio law. We perceive no requirement in *Miranda* that the parents of a minor shall be read his constitutional rights along with their child, and that, by extension, both parent and child are required to intelligently waive those rights before the minor makes a statement."[2] *Id.* In construing

---

[1] In *Sills* v. *State* (Ind. 1984), 463 N.E. 2d 228, the Supreme Court of Indiana recognized that under the Indiana Code, juveniles could no longer waive their *Miranda* rights without the approval of either an attorney or custodial parent. (Citing Ind. Code Section 31-6-7-3 [1980 Repl.].)

[2] Several jurisdictions have held that a

whether a juvenile defendant's confession has been involuntarily induced, courts should consider the standard set forth in *State* v. *Edwards, supra,* which looks to the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. Given the above standard, the trial court can properly determine whether the juvenile appreciated his rights and voluntarily waived them in the absence of an interested adult or parent.

In reviewing whether the appellants voluntarily waived their *Miranda* rights, we note that they were apprised of their rights verbally and proceeded to execute waiver forms. Furthermore, we have examined the testimony of the appellants and interrogating officers, as well as the ages and academic backgrounds of the appellants. We conclude that under the totality of the circumstances the trial court did not err in determining that the confessions were voluntary, and in overruling appellants' motions to suppress.

Next, appellants assert that the trial court erred by not granting their respective motions for separate trials.

Specifically, appellants claim that the trial court improperly admitted inculpatory statements of each codefendant to the prejudice of the other two defendants. In *Bruton* v. *United States* (1968), 391 U.S. 123, the Supreme Court of the United States was confronted with a robbery conviction of a nonconfessing defendant who had been implicated in the crime by a co-defendant's extrajudicial confession. The court held that the admission of the co-defendant's confession had deprived the defendant of his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. In *Lee* v. *Illinois* (1986), 476 U.S 530, the Supreme Court explained its holding in *Bruton* by noting at 542:

"Our ruling in *Bruton* illustrates the extent of the Court's concern that the admission of this type of evidence will distort the truthfinding process. In *Bruton,* we held that the Confrontation Clause rights of the petitioner were violated when his codefendant's confession was admitted at their joint trial, despite the fact that the judge in the case had carefully instructed the jury that the confession was admissible only against the codefendant. We based our decision in *Bruton* on the fact that a confession that incriminates an accomplice is so 'inevitably suspect'

---

confession is not inadmissible merely because the person making it is a minor. See *DeSouza* v. *Barber* (C.A. 9, 1959), 263 F. 2d 470, certiorari denied (1959), 359 U.S. 989, and *Olivera* v. *State* (Okla. Crim. App. 1960), 354 P. 2d 792 (defendants' ages standing alone were not enough to suppress their confessions); *Commonwealth* v. *Cavalier* (1925), 284 Pa. 311, 131 A. 229 (a confession given by a fourteen year old was upheld since the law made him responsible for his actions); *Mosley* v. *State* (1969), 246 Ark. 358, 438 S.W. 2d 311 (a fifteen year old was capable of making an admissible

voluntary confession, there being no requirement that he have advice of his parent, guardian or other adult); *Boyd* v. *State* (Ala. Crim. App. 1977), 350 So. 2d 757 (a voluntary confession from a sixteen year old who was fully informed as to all his rights was admissible where his age and mental faculties made him amenable to criminal sanctions); see, also, Annotation, Voluntariness and Admissibility of Minor's Confession (1963), 87 A.L.R. 2d 624, and Annotation, Validity and Efficacy of Minor's Waiver of Right to Counsel — Modern Cases (1983), 25 A.L.R. 4th 1072.

and 'devastating' that the ordinarily sound assumption that a jury will be able to follow faithfully its instructions could not be applied. *Bruton, supra,* at 136."

The Supreme Court has taken a different posture when redacted confessions have been introduced at trials involving co-defendants. In *Richardson* v. *Marsh* (1987), 481 U.S. 200, 211, the Supreme Court stated with respect to the introduction of redacted confessions: "the calculus changes when confessions that do not name the defendant are at issue. While we continue to apply *Bruton* where we have found that its rationale validly applies * * * we decline to extend it further. We hold that the Confrontation Clause is not violated by the admission of a nontestifying co-defendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Cf. *Cruz* v. *New York* (1987), 481 U.S. 186, 193-194 (unredacted nontestifying co-defendant's incriminating pretrial confession violates a criminal defendant's Confrontation Clause rights under the Sixth Amendment to the federal Constitution); see, also, *Bruton, supra.* Thus, the Confrontation Clauses of Section 10, Article I of the Ohio Constitution and the Sixth Amendment to the United States Constitution are not violated by the admission of a nontestifying co-defendant's confession, where the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. See *Richardson* v. *Marsh, supra.*

In the present case each appellant argues that the confessions made by the other two co-defendants contained inculpatory statements about that appellant and, therefore, under *Bruton,* the trial court should have ordered separate trials for each appellant so that the confessions of the other co-defendants could not be used against him. Clearly, this case involves interlocking confessions from the appellants and Dante Hill. However, the record reveals that the trial court took great care to insure that each confession was considered only against the co-defendant who gave it. Moreover, the confessions were redacted to exclude any reference to the other co-defendants.

This case differs from *Bruton* in two important respects. First, because the co-defendants' confessions were redacted there was little risk of applying one co-defendant's confession against the others. Also, this case was tried before the trial judge; therefore, the risk that the jury would not follow the court's instructions was not present. Furthermore, we have noted that the trial court can be presumed to apply the law correctly, and there is no reason to believe otherwise in this case. See *State* v. *Coombs* (1985), 18 Ohio St. 3d 123, 18 OBR 153, 480 N.E. 2d 414; *State* v. *Eubank* (1979), 60 Ohio St. 2d 183, 14 O.O. 3d 416, 398 N.E. 2d 567. Therefore, we conclude that the trial court did not err in overruling appellants' motions for separate trials and in receiving into evidence the confession of each co-defendant.

Appellants maintain that their convictions were against the manifest weight of the evidence and based upon insufficient evidence. In *State* v. *Eley* (1978), 56 Ohio St. 2d 169, 10 O.O. 3d 340, 383 N.E. 2d 32, syllabus, we stated: "A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Thus, we must concern ourselves with whether there was sufficient evidence

to sustain the decision of the trier of facts. In *State* v. *Thomas* (1982), 70 Ohio St. 2d 79, 79-80, 24 O.O. 3d 150, 151, 434 N.E. 2d 1356, 1357, we explained the emphasis that appellate courts should place on the trier of facts' judgment, by noting:

"It is fundamental that the weight to be given the evidence and credibility of the witnesses are primarily for the trier of the facts. Thus, in reviewing the legal sufficiency of evidence to support a jury verdict, it is the minds of the jurors rather than [those of] a reviewing court which must be convinced. *State* v. *Petro* (1947), 148 Ohio St. 473, 501-502; *State* v. *DeHass* (1967), 10 Ohio St. 2d 230. The test for the sufficiency of the evidence in a criminal appeal is whether reasonable minds can reach different conclusions on the issue of whether defendant is guilty beyond a reasonable doubt. *State* v. *Black* (1978), 54 Ohio St. 2d 304." See, also, *State* v. *Barnes* (1986), 25 Ohio St. 3d 203, 25 OBR 266, 495 N.E. 2d 922.

In the case *sub judice,* appellants were found delinquent for having been complicitors in the offense of murder.[3] Also, David Johnson was found delinquent for having committed petty theft. The facts show that Anthony

Watson announced his intention to attack Robert Cooley on the night of the incident. David, Terrence, and Dante followed Robert to the park. A witness identified David as carrying a piece of concrete in the vicinity of Richmond Park where the incident took place. And, Terrence admitted hitting Robert twice.

Therefore, upon a complete review of the facts, as presented to the trial court, we find that there was substantial evidence upon which reasonable minds could have reached different conclusions on the issue of whether appellants were guilty beyond a reasonable doubt of the crimes with which they were charged. See *State* v. *Thomas, supra; State* v. *Black, supra.*

In conclusion, we hold that appellants voluntarily relinquished their *Miranda* rights, and were properly tried together in the same proceeding, since their confessions and that of Dante Hill had been redacted.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.

---

[3] "Murder" is defined as purposely causing the death of another, R.C. 2903.02 (A), while "complicity" is defined by R.C. 2923.03(A) as:

"No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense."