OPINION
Jennifer Coia is appealing from the decision of the Common Pleas Court of Miami County, Juvenile Division finding her guilty of endangering children, a violation of R.C. 2929.22(A), which provides in pertinent part as follows: "(A) No person, who is the parent, guardian, custodian, person having custody or control, or a person in loco parentis of a child under eighteen years of age . . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support."
The defendant, age seventeen at the time of the court's decision, is the natural mother of Hailey Coia, age eight months at the time of the decision. The facts found by the trial court are set forth in full in the court's judgment entry dated November 30, 2001, as follows:
The Court finds beyond a reasonable doubt as follows:
 1. The Defendant Jennifer Coia's date of birth is July 2, 1984.
 2. Hailey Coia is the Defendant's biological daughter.
3. The Defendant is Hailey Coia's mother and parent.
 4. Hailey Coia's date of birth is May 23, 2001. [sic. Hailey's date of birth is actually May 23, 2000. Stipulated by the parties at Tr. 6 of the August 28, 2001, hearing].
 5. From approximately October 2000 until on or about February 28, 2001, the Defendant and Hailey Coia resided with John Dysinger at an apartment in the City of Piqua, Miami County, Ohio.
 6. During that time prior to February 25, 2001, John Dysinger was physically violent with the Defendant, and John Dysinger was not mentally stable at all times.
 7. During that time, John Dysinger was rough with Hailey Coia in the Defendant's presence.
 8. Knowing that John Dysinger was violent and knowing that he was not at all times mentally stable and that he had been rough with Hailey Coia, the Defendant on numerous occasions during that time, allowed John Dysinger to babysit and provide care to Hailey Coia without the Defendant being present.
 9. The Defendant knew that it was likely that Hailey Coia would be injured while in John Dysinger's care.
 10. From approximately mid December 2000 to February 23, 2001, Hailey Coia suffered numerous fractures to her bones while in the care of the Defendant and John Dysinger.
 11. On or about February 23, 2001, Hailey Coia suffered a fracture to her left supracondylar humerus (left elbow) while in the care of the Defendant and John Dysinger.
 12. All the fractures that Hailey Coia suffered were non-accidental injuries, and resulted from violent and forceful twisting, yanking or pulling.
 13. On February 24, 2001, Hailey Coia spent the night at Betty Smith's residence in Piqua, Ohio.
 14. When the Defendant took Hailey Coia to Betty Smith's residence on February 24, 2001, the Defendant knew that Hailey Coia's left arm was swollen, bruised and sore, but the Defendant did not inform Betty Smith of Hailey Coia's left arm being swollen, bruised or sore.
 15. The Defendant did not seek medical care for Hailey Coia for any of those fractures until February 25, 2001, after Betty Smith insisted that the Defendant take Hailey Coia to the doctor for her bruised, sore, and swollen left arm.
 16. Those numerous fractures to Hailey Coia's bones were in various stages of healing on February 25, 2001.
 17. After seeking medical care for Hailey Coia on February 25, 2001, the Defendant and Hailey Coia returned with John Dysinger to John Dysinger's residence in Piqua, Miami County, Ohio, and the Defendant and Hailey Coia resided there with John Dysinger until approximately February 28, 2001.
 18. The Defendant had a duty of care and protection to Hailey Coia to not leave Hailey Coia alone with John Dysinger or allow John Dysinger to babysit and provide care to Hailey Coia.
 19. The Defendant violated this duty of care and protection by leaving Hailey Coia alone with John Dysinger and allowing John Dysinger to babysit and provide care to Hailey Coia.
 20. The Defendant created a substantial risk to the health and safety of Hailey Coia by leaving Hailey Coia alone with John Dysinger and allowing John Dysinger to babysit and provide care to Hailey Coia because there was a strong possibility that Hailey Coia would be injured and suffer fractures to her bones while in the care of John Dysinger.
 21. Each fracture to Hailey Coia's bones, including the fracture to Hailey Coia's left supercondular humurous (left elbow), constituted serious physical harm because each fracture involved some temporary substantial incapacity because Hailey Coia temporarily could not use her fractured limbs, and because the pain from each fracture was acute pain to Hailey Coia of such duration as to result in substantial suffering.
 22. With each fracture, the Defendant would have noticed that Hailey Coia was not using her fractured limbs and was in pain after John Dysinger babysat Hailey Coia but the Defendant continued to allow John Dysinger to babysit Hailey Coia, and Hailey Coia continued to suffer fractures to her bones.
 23. The Defendant was reckless in leaving Hailey Coia in John Dysinger's care because with heedless indifference to the consequences, the Defendant perversely disregarded a known risk that John Dysinger was violent and at times mentally unstable and that John Dysinger would injure Hailey Coia.
 24. On or about February 24, 2001, in Miami County, Ohio, the Defendant Jennifer Coia, who was the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age, created a substantial risk to the health or safety of the child, to wit: Hailey Coia (d.o.b. 5/23/2000), by violating a duty of care, protection or support, in violation of section 2919.22(A) of the Ohio Revised Code, and that the violation resulted in serious physical harm to Hailey Coia.
 25. Therefore, the Defendant is guilty of violating sections 2151.02, 2151.27 and 2919.22(A) of the Ohio Revised Code, Endangering Children, a felony of the third degree (F3).
Therefore, the Defendant is adjudicated a juvenile delinquent in violation of sections 2151.02 and 2919.22(A) of the Ohio Revised Code, Endangering Children, a felony of the third degree (F3).
IT IS THEREFORE THE ORDER OF THE COURT THAT:
 1. The Defendant be committed to the Ohio Department of Youth Services for institutionalization for an indefinite term consisting of a minimum period of six months and a maximum period not to exceed the Defendant's attainment of twenty-one years of age.
 2. The Defendant's institutionalization at the Ohio Department of Youth Services to run concurrently with case number 20120531.
 3. The Defendant pay Court costs in the amount of $398.10.
 4. The Defendant shall keep the Court informed of any change of name or address during the pendency of this action or until all Court orders are completed.
IT IS SO ORDERED.
On appeal, the defendant, represented by counsel, brings to us the following two assignments of error:
 1. THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR A JUDGMENT OF ACQUITTAL BASED UPON STATE'S FAILURE TO PRESENT SUFFICIENT EVIDENCE.
 2. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
The two assignments of error essentially raise the same issue, and we will address them together.
As this court stated in State v. Bogan (June 14, 1990), Montgomery App. No. 11920:
 In reviewing an assignment of error alleging that a criminal conviction is against the manifest weight of the evidence, a reviewing court must limit its inquiry to determining whether there "was sufficient evidence to sustain the decision of the trier of fact." In Re Watson (1989), 47 Ohio St.3d 86, 91-92. We may not disturb a trial court's judgment where competent, credible evidence is presented which is sufficient to convince the average person of the defendant's guilt beyond a reasonable doubt. State v. Eley (1978), 56 Ohio St.2d 169. See, also, State v. Chambers
(Sept. 28, 1982), Montgomery App. No. CA 7360, unreported; State v. Sweet (October 13, 1989), Montgomery App. No. 10876, unreported. As we recently stated in State v. Kitt (December 27, 1989), Montgomery App. No. 11621, unreported:
 It is well settled in Ohio that reversal cannot be had on the ground that a judgment is against the weight of the evidence except as a matter of law. An appellant court cannot reverse on that ground because the evidence sustaining conviction is open to suspicion or does not impress the reviewing court. The appellate court may not reverse because it believes another trier of fact might have arrived at a different conclusion or that a contrary verdict might have been rendered.
* * *
* * *
 A judgment in a criminal case should not be reversed as being against the manifest weight of evidence where there is substantial evidence on which the trier of fact could reasonably find that all the elements of the charged offense have been proven beyond a reasonable doubt. (Emphasis supplied).
As for the motion for acquittal, the appellant admits that the standard for reviewing it is:
 "whether the evidence is insufficient to sustain a conviction" of the offenses charged. (C.R. 29(A)). This Court is required to view the evidence in light most favorable to the State when reviewing the denial of Criminal Rule 29(A) motion. State v. Morris, Nov. 29, 1989, Mont. App. No. 10992, unreported. State v. Wood, 1985, 25 O.App.3d 35, 38. A judgment of acquittal shall not be granted:
 If the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proved beyond a reasonable doubt. State v. Richmond, (1978), 55 Ohio St.2d 261, syllabus.
Therefore, if the State fails to present evidence on a material element then the trial court must grant the motion for a judgment of acquittal.
Brief, 5.
Under this first assignment of error, the appellant argues that the State presented no evidence that John Dysinger was violent with Hailey so as to cause her injuries or that appellant was aware of his violence towards Hailey. On the contrary, we have read the transcript, and we find that there was abundant evidence that the appellant knew that John Dysinger was a violent person, and that he mistreated Hailey in the defendant's presence, and that Hailey suffered numerous fractures while in his care. See, e.g., Hearing 10/4/01, Tr. 11 through 28, 52-53, and Hearing 10-5-01, Tr. 10-12, 14, 31-32, 35, 37. There is testimony by an expert witness that the fractures were child abuse and not accidental injuries. Hearing 10/4/01, Tr. 25.
We find that there was substantial evidence presented to the trial court in which it could reasonably find that all the elements of the charged offense had been proven beyond a reasonable doubt. For that reason, the first assignment of error regarding the motion for acquittal is overruled and, for the same reason, the second assignment of error is overruled. The judgment is affirmed.
WOLFF, P.J. and FAIN, J., concur.